# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

LAYALI AL-MANSOUR          :
                           :
                           :
    v.                     :    Civil No. CCB-10-1729
                           :
                           :
MUHAMMAD ALI SHRAIM        :
                           :
                           :

## MEMORANDUM

Layali Al-Mansour has sued her husband, Muhammad Ali Shraim, for financial support pursuant to a Form I-864 Affidavit of Support Mr. Shraim signed to sponsor his wife's application for permanent residency. Now pending before the court is the plaintiff's motion for summary judgment. The motions have been fully briefed and no oral argument is necessary. For the reasons stated below, the plaintiff's motion for summary judgment will be granted.

## BACKGROUND

Ms. Al-Mansour, a citizen of Jordan, married Mr. Shraim, a United States citizen, in 2007. To enable Ms. Al-Mansour to obtain her green card, Mr. Shraim signed a Form I-864 Affidavit, agreeing to support her at an income of at least 125 percent of the federal poverty guideline.[1] On February 2, 2011, the court granted partial summary judgment to Mr. Shraim for 2009, finding that he had satisfied his Form I-864 Affidavit obligations for that year. At that time, the court also denied without prejudice Ms. Al-Mansour's motion for summary judgment as to Mr. Shraim's liability for the year 2010. On February 14, 2011, Ms. Al-Mansour filed a new motion for summary judgment, with additional evidence as to both Mr. Shraim's liability

---

[1] Further details regarding the factual background of this case are included in a prior opinion. *See Al-Mansour v. Shraim*, 2011 WL 345876, at *1 (D.Md. Feb. 2, 2011). Knowledge of these facts is assumed.

1

and damages for 2010. Mr. Shraim has opposed the motion.

## ANALYSIS

### A. Motion for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Under federal law, a sponsor who signs a Form I-864 Affidavit "agrees to provide

2

support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable." 8 U.S.C. § 1183a(a)(1)(A). The terms of the affidavit provide for the appropriate "measure of damages that would put plaintiff in as good a position as she would have been had the contract been performed." *Shumye v. Felleke*, 555 F. Supp. 2d. 1020, 1024 (N.D. Cal. 2008) (citation omitted). To determine the appropriate damages, courts compare the plaintiff's annual income for the particular years at issue, rather than the aggregate income for the entire period, against 125% of the poverty threshold for each particular year. *Id.* at 1024-25. A sponsor may also be held liable for legal fees and other costs of collection. *See* 8 U.S.C. § 1183a(c).

Mr. Shraim argues that he is under no obligation to support Ms. Al-Mansour because she received income exceeding 125% of the federal poverty guidelines during the year 2010. Mr. Shraim alleges that Ms. Al-Mansour received income from three different sources: (1) a housing subsidy in exchange for house-sitting; (2) monetary gifts from friends and family; and (3) the sale of property known as Apartment 122 constructed on Lot Number 575 in basin 6 on Tlaa' Al-Ali, located in Amman, Jordan.

    *1. Housing Subsidy*

Mr. Shraim argues that summary judgment should be denied because, in 2010, Ms. Al-Mansour received the equivalent of earned income in the amount of $28,800 as a house-sitter. Ms. Al-Mansour resides at 4401 North Charles Street in Baltimore, Maryland. On March 15, 2010, as part of the parties' divorce proceedings in state court, Ms. Al-Mansour's landlord, Mikhail Zhivenko, provided the court with a letter stating that Ms. Al-Mansour paid $200 per month for rent, and that during his absences from Maryland, she was expected to "pick up the mail, water plants, and house sit." (Letter from Mikhail Zhivenko, Ex. 1A, ECF No. 19.) Relying

3

on this letter, Mr. Shraim alleges that Ms. Al-Mansour was employed as a house-sitter and received a housing subsidy of approximately $3,200 per month, which is an estimated amount based on the fair market rental value of a single family home located in Mr. Zhivenko's neighborhood. Mr. Zhivenko, however, has provided an affidavit clarifying that Ms. Al-Mansour shares the home with Mr. Zhivenko and his wife, rents one small room in the home, has access to one bathroom and the kitchen, and does not receive any credit for completing house chores. (Zhivenko Aff. at 1, ECF No. 20.) Mr. Zhivenko also clarified that Ms. Al-Mansour is a roommate, not a house-sitter, and is required to do only the chores expected of any roommate. (*Id.* at 1-2.) Given Mr. Zhivenko's affidavit, there is no genuine dispute that Ms. Al-Mansour was anything more than a roommate paying rent to Mr. Zhivenko and his wife. In short, there is no basis to find that Ms. Al-Mansour received a housing subsidy amounting to earned income as a house-sitter.

2. *Monetary Gifts*

Mr. Shraim also contends that summary judgment is inappropriate because Ms. Al-Mansour received an unspecified amount of monetary support from friends and family in 2010. Ms. Al-Mansour admits that her father has provided her with more than $20,000 to help her defray the costs of travel, living, and litigation expenses. (*See* Pl.'s Reply ¶ 5, ECF No. 20.) She also admits to having received financial assistance from at least two other individuals. Contrary to Mr. Shraim's assertions, however, the record shows that these are not monetary gifts. Both her father and her friends provided her with monetary support with the expectation of being repaid in the future (*see* Al-Mansour Aff. at 2, Mar. 7, 2011, ECF No. 20), and Ms. Al-Mansour has provided promissory notes for each of these loans. (*See* Zuhdi Al-Mansour Promissory Note; Khaled Shakra Promissory Note; Adam Aburub Promissory Note, ECF No. 20.) These loans

4

qualify as debt, not income, for Ms. Al-Mansour in 2010.

        3. *Property in Jordan*

Finally, Mr. Shraim alleges that Ms. Al-Mansour sold property she owned in Amman, Jordan to her mother in June 2010 and kept profits from the sale as her own. As an initial matter, the court notes that Mr. Shraim testified in a deposition that he originally transferred the property in Jordan to Ms. Al-Mansour with the expectation that she would sell it on his behalf and transfer the proceeds to him. (Shraim Dep. 149:8-20, March 23, 2010.) To support his allegation that Ms. Al-Mansour sold the property for her own profit in 2010, Mr. Shraim has provided a letter from the Land and Survey Department of the Ministry of Treasury indicating that the property was transferred from Mr. Shraim to Ms. Al-Mansour on August 2, 2007. (*See* Def.'s Mot. for Summ. J., Ex. 4, ECF No. 13.) The letter further states: "The Asset then sold according to sales contract number 4573 dated June 24, 2010 and was registered in the name of Qamar Muhammad Naji Abu Rub." (*Id.*) Even accepting this letter as true, it does not provide evidence that Ms. Al-Mansour received income from the sale of the property. All it reveals is that Ms. Al-Mansour is no longer the owner of the property. In fact, this letter is consistent with Ms. Al-Mansour's sworn statement that she did not sell the property, but instead lost it to foreclosure in 2010. (*See* Al-Mansour Aff. ¶ 9, 14, Feb. 9, 2011, ECF No. 18.) Beyond this letter, which fails to disprove Ms. Al-Mansour's sworn affidavit that she earned no income in 2010, Mr. Shraim provides no additional evidence, such as bank statements or account records, to show that Ms. Al-Mansour received profits from the sale of the property in Jordan. Thus, there is no basis to conclude that Ms. Al-Mansour received any income from the sale of property in 2010.

Because the defendant has failed to provide any evidence that the plaintiff earned any income from outside sources sufficient to offset his obligations under the Form I-864 Affidavit,

the court will grant Ms. Al-Mansour's motion for summary judgment.

**B. Remedy**

Pursuant to the Federal Register, the poverty guideline for a household size of one person is $10,830 for 2010;[2] and is $10,890 for 2011.[3] The following figures represent 125% of these federal poverty levels:

**2010:** $13,537.50

**2011:** ($1,134.37 * 3) = $3,403.11[4]

**Total:** $13,537.50 + $3,403.11 = $16,940.61

Based on the above figures, judgment will be entered against the defendant in the amount of $16,940.61 for past support accumulated from the beginning of 2010 through March 2011. The court notes that the defendant is obligated to sponsor the plaintiff at 125% of the federal poverty level until his obligation expires by law. Currently, this requires the defendant to pay Ms. Al-Mansour $1,134.37 per month through the end of 2011.[5] Moreover, under federal law, a sponsor may also be held liable for legal fees and other costs of collection. *See* 8 U.S.C. § 1183a(c). The

---

[2] Annual Update of the HHS Poverty Guidelines, 75 Fed. Reg. 45628 (Aug. 3, 2010). The 2010 Poverty Guidelines did not take effect until August 3, 2010 due to legislation that prohibited the Secretary of HHS from publishing the 2010 guidelines before May 31, 2010. Prior to August 3, 2010, the 2009 Poverty Guidelines remained in effect. The Guidelines for 2009 and 2010, however, showed no change—the poverty guideline for a household the size of one remained at $10, 830 for both years. *See* Annual Update of the HHS Poverty Guidelines, 74 Fed. Reg. 4199 (Jan. 23, 2009).

[3] Annual Update of the HHS Poverty Guidelines, 76 Fed. Reg. 3637 (Jan. 20, 2011).

[4] For 2011, 125% of the poverty guideline is $13,612.50, or $1,134.37 per month. The total remedy for 2011 was calculated through the end of March 2011.

[5] The parties are currently in divorce proceedings, but no alimony has yet been awarded.

plaintiff may file an appropriate motion and affidavit demonstrating reasonable attorneys' fees and costs within 21 days after the date of the final order, which follows.


April 14, 2011                                            /s/
Date                                                Catherine C. Blake
                                                    United States District Judge